Before the
UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MARYLAND

_____

| | |
|---|---|
| *SIMMS SHOWERS LLP,* )  | |
| Plaintiff, ) | |
| ) | |
| **v.** ) | **Case No.: 1:23-cv-02827** |
| ) | The Honorable Adam B. Abelson |
| *MICHAEL JONES,* ) | |
| Defendant. ) | |
| ) | |

_____

**Date:** December 10, 2024

### DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Michael Jones, proceeding pro se, hereby submits this Notice of Supplemental Authority to inform the Court of significant procedural developments in the parallel state court action, *Michael Jones v. Simms Showers LLP, et al.*, Case No. C-03-CV-24-003198, currently pending before the Circuit Court for Baltimore County, Maryland. These developments bear directly on the pending motion(s) before this Court and further support the propriety of adjudicating Jones' state tort claims in state court.

### 1. RELEVANT PROCEDURAL DEVELOPMENTS IN STATE COURT

On December 6, 2024, [1] the state court issued an ***order staying*** but not dismissing the parallel state action filed by Jones. This procedural development is highly significant, as Simms Showers LLP had specifically requested dismissal or, alternatively, a stay of the

---

[1] ***See*** Exhibit A, State Court Order Staying the Case (dated December 6, 2024). The order reflects the court's choice to stay proceedings rather than dismiss the case, thereby signaling the continued validity of Jones' claims under state law jurisdiction.

action. While the title of their motion, **"Defendant Simms Showers' Motion to Stay or, in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction"**, gave the appearance of neutrality, their primary objective was clear—dismissal under the guise that the state court lacked jurisdiction. Simms Showers argued that "this Court lacks subject matter jurisdiction of the Plaintiff's state law claims as such claims are entirely preempted by the federal court's exclusive jurisdiction over alleged misconduct during a bankruptcy proceeding" and explicitly invoked Rule 2-322 as the procedural basis for dismissal.

Despite these arguments, the state court did not dismiss the case. Instead, it **chose to stay the proceedings**, a critical distinction that exposes the weakness of Simms Showers' jurisdictional argument. Had the state court agreed with Simms Showers' assertion that it lacked jurisdiction, the proper and mandatory course of action would have been to grant dismissal under Rule 2-322. Courts do not stay cases over which they lack jurisdiction. By choosing to stay, rather than dismiss, the state court implicitly affirmed its jurisdiction over the matter and retained authority to resolve the claims.

Had the judge been persuaded by Simms Showers' argument that the court lacked jurisdiction [2], the proper course would have been to grant dismissal under Maryland Rule 2-322(b)(1) (lack of subject matter jurisdiction). However, the judge did not dismiss the case. This decision is meaningful because courts do not issue stays where jurisdiction is clearly lacking. By issuing the stay, the court has indicated that it does not view jurisdiction as a fatal defect. This choice reflects a recognition of the court's authority to adjudicate the claims at a later date.

The state court's decision to stay, rather than dismiss, the case is a clear indication that it recognizes its jurisdiction over Jones' claims. Courts must have jurisdiction before they can issue any substantive rulings, and if the state court believed it lacked jurisdiction, the proper course would have been to dismiss the case under Maryland Rule 2-322(b)(1) for lack of subject matter jurisdiction. By choosing to stay the case instead, the court implicitly acknowledged that it has jurisdiction to hear the matter. This directly supports Jones' position that these tort claims—**Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress (IIED)**—are properly adjudicated in state court.

As noted, Simms Showers LLP's motion to dismiss was predicated on the argument that the state court lacked jurisdiction, relying on a misguided theory that Jones' tort claims were somehow preempted by federal bankruptcy law. The state court's refusal to

---

[2] The state court's issuance of a stay, rather than a dismissal, demonstrates that it has not found jurisdiction lacking. Courts generally issue stays only where they maintain jurisdiction over the claims and intend to revisit the matter after a pending event, such as the resolution of a related action in another forum.

dismiss the case is a **strong indication that it did not find this jurisdictional argument persuasive** [3]. Instead, the court implicitly acknowledged that Jones' claims — **Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress (IIED)** — are **classic state tort claims** that fall squarely within the jurisdiction of state courts. The court's action confirms that it views these claims as **independent, non-bankruptcy claims that belong in state court.**

Unlike core bankruptcy proceedings [4], which are exclusively within the purview of bankruptcy courts, the claims presented here arise from **intentional tortious conduct** and are entirely unrelated to core bankruptcy functions. The state court's decision to stay, rather than dismiss, reflects its recognition that these claims are properly before the state court—not the federal court. This procedural posture supports Jones' argument that the state court is the appropriate forum to resolve these tort claims, especially given that the claims are **personal injury torts**—claims which are uniquely suited for resolution in a state court setting.

This development also highlights the broader issue of Simms Showers' procedural tactics. Instead of addressing the merits of the claims in state court, Simms Showers sought to dismiss or stay the case but did not engage with the substance of Jones' complaint. The absence of any substantive response further supports the notion that Simms Showers is engaging in procedural delay tactics to avoid litigation on the merits. This conduct mirrors Simms Showers' approach in this federal court, where it amended its federal complaint to shift legal theories and avoid addressing the flaws in its original claims. Instead of owning its mistakes, Simms has unfairly placed the burden on Jones and this Court to navigate the confusion caused by its own missteps.

The refusal to dismiss, combined with the court's decision to stay, affirms the jurisdictional legitimacy of Jones' claims and highlights the state court's role as the appropriate forum to adjudicate these tort claims. Simms Showers' procedural maneuvers have done nothing more than delay the inevitable adjudication of these claims on the merits. This development is yet another indicator that the state court has the authority, competence, and jurisdiction to resolve these claims, and that state court is where they belong.

---

[3] **Under Rule 12(b)(1)** — of the Federal Rules of Civil Procedure, if a court finds that it lacks subject matter jurisdiction, the proper course of action is to dismiss the case outright. Here, the state court did not dismiss. Instead, it stayed the case, which necessarily implies the court has jurisdiction and sees no fatal defect in its authority to hear the claims.

[4] **Jones' claims** — Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress — are classic state tort claims. These claims are distinct from 'core bankruptcy matters' because they do not arise from the administration of the bankruptcy estate, nor do they relate to the adjustment of debtor-creditor relations, both of which are hallmarks of core bankruptcy issues.

## 2. TIMELINE OF PROCEDURAL EVENTS

To provide the Court with a clear understanding of the procedural posture, below is a timeline of relevant filings and case events:

| Date | Event | Commentary |
| --- | --- | --- |
| October 19, 2023 | Defendants file initial federal complaint in Case No. 1:23-cv-02827. Speculative claims based on two inconsequential emails and a misunderstanding of bankruptcy law. | Initial federal complaint lacked immediate controversy and was procedurally deficient. |
| August 24, 2024 | Plaintiff files state tort claims in Baltimore County Circuit Court addressing Defendants' litigation misconduct during adversary proceedings. | First legitimate action addressing substantive claims of tortious misconduct. |
| August 29, 2024 | Defendants seek and are granted alternative service in federal case, despite misleading claims of genuine efforts to serve Plaintiff. | Defendants' reliance on alternative service reflects procedural shortcuts. |
| October 11, 2024 | Defendants file a materially amended federal complaint in Case No. 1:23-cv-02827, introducing new claims and legal theories to avoid dismissal. | Amended complaint effectively resets procedural timeline, negating reliance on first-to-file doctrine. |
| November 15, 2024 | Defendants file motion to dismiss or stay in the state court case, failing to address any merits or provide a substantive reply to Plaintiff's complaint. | Defendants continue procedural delays, evading substantive engagement with the state tort claims. |

The timeline, is just a small glimpse [5], and highlights Simms Showers' consistent pattern of delay and avoidance. Despite multiple opportunities, they have failed to file any substantive response to the state court tort claims or this federal case. Instead, they have relied exclusively on procedural maneuvers, and questionable tactics to deliberately avoid engagement on the merits.

## 3. STATE TORT CLAIMS ARE DISTINCT FROM FEDERAL BANKRUPTCY ISSUES

The state claims—**Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress (IIED)—are quintessential state tort claims**, fundamentally distinct from any bankruptcy-related core matters. These claims arise directly from Simms Showers actions and conduct, which caused personal injury and

---

[5] **See** Timeline of Procedural Events, included within this filing, which illustrates Simms Showers' pattern of delay, procedural manipulation, and refusal to engage on the merits of Plaintiff's claims.

harm to the Jones. They do not touch upon core bankruptcy functions or federal concerns. Instead, they address harm resulting from tortious misconduct, for which state courts provide the appropriate remedies. State courts are uniquely equipped to adjudicate such claims under state law, ensuring that the injuries caused by Plaintiffs' actions are fully and properly addressed. Allowing these claims to proceed in state court ensures that the matter is resolved in the proper forum of a jury, as these torts are well within the jurisdiction and expertise of state courts.

Simms Showers has argued that the federal court has "exclusive jurisdiction" over these claims. However, this is inaccurate. Federal courts do not have exclusive jurisdiction over tort claims that arise from **malicious prosecution, abuse of process, or intentional infliction of emotional distress (IIED)**. Instead, state courts have long been recognized as the proper venue for torts of this nature, as these claims address personal injuries caused by tortious conduct and fall squarely within the domain of state law.

The state court's decision to stay, rather than dismiss, is significant. After reviewing the relevant filings, including Jones' complaint, the court declined to dismiss the case, implicitly affirming that the claims are valid tort claims under state law and fall squarely within the state court's jurisdiction.

## 4. MISLEADING APPLICATION AND MISUSE OF THE *"FIRST-TO-FILE"* DOCTRINE

Simms Showers' reliance on the "first-to-file" [6] doctrine in their motion to dismiss in state court was fundamentally flawed and misrepresents both the procedural timeline and the substantive nature of the claims at issue. Their argument that the federal declaratory judgment action was filed first and should therefore preclude the state court case is misleading and legally unsound. Here's why:

1. **Material Differences in Claims**: The original federal complaint filed by Simms Showers in October 2023 was not a tort complaint, but rather a speculative attempt to seek declaratory relief based on two inconsequential emails and a blatant misinterpretation of basic bankruptcy law. It was only after Jones filed his state court tort claims in August 2024, followed by Jones' motion to dismiss Simms Showers' federal complaint, that the fatal flaws in Simms Showers' legal theory were exposed. Jones' motion to dismiss demonstrated that Simms Showers had misapplied fundamental principles of bankruptcy law and that their complaint was predicated on speculative, non-controversial email exchanges that

---

[6] ***See*** Fed. R. Civ. P. 15(c) (allowing relation back of amendments only where the claims arise out of the "conduct, transaction, or occurrence" set forth in the original pleading). Courts have consistently applied this principle to determine that amended complaints introducing new claims, theories, or material changes to the original pleading are treated as new filings for procedural purposes, including the "first-to-file" doctrine.

provided no actual case or controversy for the federal court to adjudicate. Faced with the inevitability of dismissal, Simms Showers strategically amended its federal complaint, introducing entirely new legal theories and materially distinct claims in a last-ditch effort to avoid dismissal.

The amended complaint did not "relate back" to the original complaint for purposes of the "first-to-file" doctrine. Courts have consistently held that when an amended complaint introduces new claims, legal theories, or material changes to the original pleading, it is treated as a new filing for purposes of procedural doctrines such as the "first-to-file" rule. As a result, the relevant filing date for purposes of the doctrine is the date of the amended complaint—not the date of the original complaint.

Here, Jones' state tort claims—**Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress (IIED)**—were filed in state court on August 24, 2024, prior to Simms Showers' filing of its materially altered amended complaint based on new legal theories. Accordingly, the first-to-file doctrine weighs in favor of Jones, not Simms Showers. The sequence of filings further demonstrates that Simms Showers' reliance on the first-to-file doctrine is both legally flawed and strategically misleading, as it disregards the critical context of its own substantial amendments to its federal complaint.

2. **No Substantive Response in State Court**: Simms Showers has never substantively responded to the merits of the state court tort claims. Instead of filing an answer, they sought to dismiss the case over jurisdiction, further evidencing their intent to delay and frustrate the litigation process. This refusal to engage with the claims highlight the procedural nature of their tactics. By failing to respond to the substantive allegations in state court, Simms Showers has effectively conceded that the state court is the proper forum to resolve the tort claims. Their reliance on the "first-to-file" doctrine is disingenuous in light of their refusal to engage on the merits of the state court case.

3. **Procedural Misconduct and Deliberate Delay [7]:** Simms Showers amended its federal complaint solely to avoid dismissal. Its original federal complaint was predicated on a fundamental misinterpretation of basic bankruptcy law, rendering it legally deficient on its face. Without the amendment, the original complaint would have been dismissed as a matter of basic law. Rather than litigate the merits of their original filing, Simms Showers introduced entirely new factual

---

[7] Simms Showers' procedural tactics are part of a broader pattern of misconduct, including misleading statements made in support of its motion for alternative service. See Plaintiff's Motion to Quash Defective Service of Process, Strike Improper Amended Complaint, and Dismiss with Prejudice for Procedural Misconduct (filed October 14, 2024).

allegations and legal theories, effectively creating a new complaint without having to pay the $350 filing fee. Courts have consistently held that when a party files an amended complaint to avoid dismissal, the newly asserted claims do not "relate back" for purposes of the "first-to-file" doctrine. Here, the "first-to-file" analysis must be based on the date of the amended complaint—not the date of the original filing. Since Simms Showers' amended complaint was filed after Jones' state tort claims, it is Jones' claims that were first properly filed.

4. **State Court's Implicit Rejection of Simms Showers' Jurisdictional Argument**: In its motion to dismiss, Simms Showers argued that the state court lacked jurisdiction, asserting that the federal court had "exclusive jurisdiction" over Jones's claims. This argument was a central point in its motion to dismiss. However, the state court did not dismiss the claims. Instead, it stayed the case, implicitly recognizing that Jones's claims—**malicious prosecution, abuse of process, and intentional infliction of emotional distress**—are state law torts properly within the jurisdiction of the state court. **Had the state court agreed with Simms Showers' argument regarding jurisdiction, it would have dismissed the case outright.** By choosing to stay the case rather than dismiss it, the state court confirmed that the claims are proper tort claims distinct from core bankruptcy issues.

5. **Misuse of the First-to-File Doctrine:** Simms Showers attempts to invoke the "first-to-file" doctrine as a procedural shield, but their reliance on this doctrine remains legally flawed. Their original complaint was predicated on a misguided and legally untenable interpretation of bankruptcy law. When faced with inevitable dismissal, Simms Showers materially altered their legal theories and factual allegations in an amended complaint. Crucially, this amended complaint was filed after Jones had already filed his state court tort claims. As such, the "first-to-file" doctrine does not apply. Simms Showers cannot hide behind procedural technicalities to mask the fact that Jones' tort claims were properly and timely filed before Simms Showers' amended complaint.

Moreover, the nature of the claims at issue is significant. Jones's claims—**malicious prosecution, abuse of process, and intentional infliction of emotional distress**—are classic state torts that arise from Simms Showers' misconduct. These claims do not implicate any core bankruptcy functions. State courts, not federal bankruptcy courts, are the proper forum for adjudicating these tort claims. The state court has already recognized its jurisdiction over these matters by choosing to stay the case rather than dismiss it. Given these facts, Simms Showers' reliance on the first-to-file doctrine is misplaced and legally unsound.

Simms Showers' attempt to invoke the first-to-file doctrine in state court is a transparent effort to delay the adjudication of Jones's state tort claims. Their reliance on a legally deficient original complaint and their subsequent attempt to use the amendment as a procedural ploy to "relate back" is disingenuous and contrary to well-established legal principles. By amending their federal complaint to avoid dismissal, they forfeited any argument that the original filing date controls. Courts have consistently rejected this tactic. The first-to-file doctrine does not apply here, and the state court remains the appropriate forum for adjudicating these classic tort claims.

**5. DELAY TACTICS AND PROCEDURAL MANIPULATION**

Simms Showers' procedural conduct reveals a deliberate strategy to delay the resolution of Jones's claims. Instead of responding to the substantive tort claims in state court, Simms filed a motion to dismiss, arguing that the court lacked jurisdiction—an argument that allowed them to sidestep engagement with the merits of the case. In federal court, rather than defending their original complaint—which was legally flawed and predicated on a fundamental misinterpretation of bankruptcy law—Simms opted to amend it. This amendment was not an effort to refine their argument but a transparent attempt to avoid dismissal. Rather than acknowledging their legal missteps, Simms has engaged in a pattern of shifting legal theories solely to evade dismissal, forcing Jones and the court to constantly chase a moving target. This procedural gamesmanship prejudices Jones as a pro se litigant, compelling him to expend disproportionate time and resources navigating Simms' ever-shifting strategies. It also imposes an unnecessary burden on this Court, diverting its attention from the substantive claims at issue to address Simms Showers' evasive tactics. This approach is not one of genuine advocacy but of procedural opportunism, relying on technical shortcuts and evasive maneuvers instead of engaging with the merits.

Simms Showers' refusal to address the merits in state court, coupled with its persistent reliance on questionable procedural maneuvers at every stage, reveals a clear pattern of bad faith conduct. This pattern is exemplified by Simms Showers' deliberate misrepresentation to the court regarding its purported "genuine efforts" at service [8] of

---

[8] *See* Simms Showers' filings regarding alternative service, where they claimed to have made "genuine attempts" at service. No evidence of such efforts was ever produced. Instead, Simms relied on unsubstantiated claims, leading the court to grant alternative service under false pretenses. Key docket entries evidencing this pattern include:

- **Dkt. No. 8** – *Response to Order to Show Cause* (Feb. 13, 2024) – Asserted attempts at service.
- **Dkt. No. 10** – *Motion to Extend Time to Serve / Motion to Stay* (Mar. 14, 2024) – Procedural request citing service issues.
- **Dkt. No. 12** – *Response to Order to Show Cause* (Mar. 15, 2024) – Repeated unsupported claims of "genuine efforts" at service.

process. Despite claiming that service was hindered due to Jones' residence in Nicaragua and the purported "difficulties" that arose as a result, Simms Showers failed to make any genuine effort to effect service of process. Rather than taking the basic steps required of any litigant in any jurisdiction, Simms sought a procedural shortcut, attempting to shift the burden onto the court and avoid the fundamental responsibilities required under the rules of service. Simms Showers statements were plainly false. Relying on these misrepresentations, the court was misled into granting alternative service under a false premise [9]. Now, Simms Showers attempts to shield itself from accountability by arguing that, since the court has already granted the alternative service, the issue cannot be revisited [10] — conveniently ignoring that the order was obtained through deliberate misrepresentation. Such conduct not only erodes confidence in the judicial process but also exemplifies Simms Showers' ongoing effort to manipulate procedural rules rather than engage in substantive litigation.[11]

This pattern of misdirection continues with Simms Showers' refusal to substantively engage with the claims in state court. Rather than addressing the merits of Jones's tort claims, Simms has sought to shield itself behind procedural maneuvers. Its avoidance tactics are not merely inconvenient — they constitute a misuse of the judicial process. **This conduct imposes an undue burden on Jones, who is self-represented, and wastes the time and resources of both the state and federal courts.** By prioritizing delay tactics over substantive engagement, Simms Showers is actively frustrating the fair and efficient administration of justice. This behavior is not only prejudicial to Jones but also a violation of the integrity of the judicial process.

---

- **Dkt. No. 19** – *Motion for Alternative Service* (Aug. 29, 2024) – Requested alternative service, relying on claims of failed attempts.
- **Dkt. No. 20** – *Order Granting Motion for Alternative Service* (Aug. 29, 2024) – Issued by the court, relying on Simms' misrepresentations.

*Simms' reliance on these unsupported claims misled the Court and secured an order for alternative service. This conduct exemplifies a pattern of procedural misconduct, improper shortcuts, and an attempt to avoid compliance with Rule 4(m). Such tactics prejudice Plaintiff, burden the Court, and undermine the integrity of the judicial process.*

[9] **See** Federal Rule of Civil Procedure 11(b) requires that representations made to the court must be truthful, supported by evidence, and made in good faith. Misleading statements to obtain relief, such as Simms Showers' claim of 'genuine attempts' at service, are prohibited and may be subject to sanctions.

[10] Deliberate misrepresentations to the court may subject the party to sanctions under Rule 11(b). Here, Simms Showers misrepresented its 'genuine attempts' for service of process, misleading the court into granting alternative service on false grounds.

[11] **See** Motion to Quash Defective Service of Process, Strike Improper Amended Complaint, and Dismiss with Prejudice for Procedural Misconduct, filed on October 14, 2024, along with an attached Proposed Order and Cover Letter. This filing highlights Simms Showers' reliance on procedural maneuvers rather than substantive engagement, including representations to the court regarding "genuine attempts" at service, despite no such efforts being made.

**6. REQUEST FOR RELIEF**

In light of the procedural developments in state court, Jones respectfully requests that this Court recognize the state court's readiness to resolve the claims, as evidenced by its decision to stay, rather than dismiss, the case. This development further affirms that the state court is the appropriate venue for adjudicating the classic tort claims at issue. The state court is prepared to move the case forward without delay, ensuring that the claims are resolved efficiently and in the proper forum.

**7. ATTACHMENTS AND EXHIBITS**

1. **Exhibit A**: State Court Order Staying the Case.

**CONCLUSION**

The state court's decision to stay, rather than dismiss, Jones's tort claims reinforces its role as the appropriate forum to adjudicate these issues. Simms Showers has engaged in procedural tactics designed to delay and frustrate the proceedings, to the prejudice of Jones. Accordingly, Jones respectfully requests that this Court take notice of these developments and acknowledge that the state court is the proper venue for the adjudication of Jones's claims.

Respectfully submitted,

Michael Jones
*Pro Se*
1B RT 72, 100 Yards North from the Space
San Juan del Sur, Nicaragua
Email: mikebroadband@gmail.com
Phone: 443-280-9915

**CERTIFICATE OF SERVICE**

I hereby certify that on **December 10, 2024**, a copy of the foregoing **Notice of Supplemental Authority** was served via **electronic mail** to the following counsel of record for Simms Showers, LLP:

**Mark A. Kohl, Esquire**
DeCARO, DORAN, SICILIANO, GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Phone: (301) 352-4950
Fax: (301) 352-8691
Email: **mkohl@decarodoran.com**

Respectfully submitted,

**Michael Jones**
Pro Se Plaintiff
1B RT 72, 100 Yards North from the Space
San Juan del Sur, Nicaragua
Email: **mikebroadband@gmail.com**
Phone: **(443) 280-9915**