## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SIMMS SHOWERS LLP,

*Plaintiff*,

v.

MICHAEL JONES,

*Defendant*

Case No. 23-cv-2827-ABA

## MEMORANDUM OPINION

In 2015, Defendant Michael Jones guaranteed a lease of a private jet from Bluebell Business Limited ("Bluebell"). After the lessee defaulted and Jones failed to pay, Bluebell sued to enforce the guaranty, beginning years of litigation in the U.K. and Maryland. After the dust had settled on those cases, Mr. Jones threatened to sue one of the law firms that had represented Bluebell, Simms Showers LLP, prompting Simms Showers to file this lawsuit for a declaratory judgment and injunction. Mr. Jones has since filed the threatened lawsuit; that case is pending (but has been stayed) in the Circuit Court for Baltimore County, Maryland. Various motions are pending in this Court, including motions by Mr. Jones to dismiss. For the following reasons, the Court concludes that it has subject matter jurisdiction over this action, and that Simms Showers has stated claims on which relief can be granted.

## I.    BACKGROUND

In May 2015, Bluebell Business Limited, a jet leasing company, leased a Gulfstream G-IV aircraft to a company called IBX Jets, LLC. *Bluebell Bus. Ltd. v. Jones*, Case No. 17-cv-2150-RDB, 2018 WL 3740694, at *1 (D. Md. Aug. 7, 2018). Mr. Jones was an officer of IBX Jets, and conceded that he was "the guarantor of the obligations

1

imposed by the Lease." *Bluebell Bus. Ltd. v. Jones*, Case No. 17-cv-2150-RDB (D. Md.) ("*Bluebell*"), ECF No. 9 (Mr. Jones's answer and counterclaim) ¶ 13.

In September 2016, Bluebell initiated litigation against Mr. Jones in the UK, filing an action in the High Court of Justice, Queen's Bench Division, seeking to enforce IBX's obligations under the Gulfstream lease. *Bluebell*, 2018 WL 3740694, at \*2. In January 2017, the UK court entered a default judgment in favor of Bluebell in the amount of $430,371.56 plus interest. *Id.* In July 2017, Bluebell filed an action in this Court against Michael Jones, seeking to enforce that foreign judgment. *Bluebell* ECF No. 1. Mr. Jones filed an answer, along with counterclaims against Bluebell. *Bluebell* ECF No. 9. Bluebell was originally represented by the LeClairRyan firm; that firm was replaced in October 2018 by the Simms Showers firm. *Bluebell* ECF Nos. 60 & 62.

Meanwhile, Mr. Jones filed two separate bankruptcy cases in the United States Bankruptcy Court for the District of Maryland. On May 8, 2018, he filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code: *In re Michael S. Jones*, Case No. 18-br-16220-RAG (Md. Bankr.) ("*Bankruptcy Case 1*"). The bankruptcy court dismissed that petition on August 2, 2018, because Mr. Jones had failed to file a Chapter 13 plan as required by prior notices and orders of the Court. *Bankruptcy Case 1* ECF No. 24.

In Bluebell's case to enforce the UK judgment, discovery was underway. But just before Mr. Jones was scheduled to be deposed in that case, he filed a second bankruptcy case on November 29, 2018, seeking relief under Chapter 7 of the Bankruptcy Code: *In re Michael Scott Jones*, Case No. 18-br-25698 (Md. Bankr.) ("*Bankruptcy Case 2*"). Judge Bennett granted a stay of the *Bluebell* district court case the next day, November 30, 2018. *Bluebell* ECF No. 77.

The Chapter 7 bankruptcy case proceeded. On March 11, 2019, Bluebell, represented by Simms Showers, filed an adversary proceeding against Mr. Jones in the bankruptcy case. *Bankruptcy Case 2* ECF No. 20; *Bluebell v. Jones* (*In re Jones*), Case No. 19-ap-74 (Md. Bankr.) ("*Adversary Proceeding*"), ECF No. 1. Bluebell contended in the adversary proceeding that Mr. Jones had knowingly made false statements about his address to the Bankruptcy Court in the Chapter 13 case as well as in the *Bluebell* district court litigation. *Adversary Proceeding* ECF No. 1 ¶ 2. Those false statements, Bluebell contended, were material to the bankruptcy "because [Jones] likely possesses property where he lives that he has not disclosed to the Bankruptcy Case." *Id.* ¶ 31. Bluebell argued they were material to the action to enforce the UK judgment because in that litigation Jones contended that he had not been properly served with the UK lawsuit, *id.* ¶ 9, and because he had made express statements about his whereabouts that Bluebell were contending were false, *id.* ¶¶ 12–13. As relief, Bluebell sought an order denying a discharge to Mr. Jones. *Id.* at 6.

While the adversary proceeding was continuing, Mr. Jones had sought to vacate the UK judgment. *See Adversary Proceeding* ECF No. 170 at 2. The High Court of Justice, Queen's Bench Division held a hearing, and on June 30, 2020 denied the motion to vacate and awarded Bluebell additional costs. *Id.*

The adversary proceeding docket reflects that that proceeding became highly contentious, involving various motions to compel and/or for sanctions, including some arising from the parallel proceedings in the UK prompted by Mr. Jones's motion in the UK court to vacate that judgment. *See Adversary Proceeding* ECF No. 75 (order granting in part, denying in part, and reserving in part on a motion by Bluebell to compel, extend discovery, and/or for sanctions) (Dec. 6, 2019); *Adversary Proceeding*

ECF Nos. 105 & 106 (May 11, 2020) (orders denying other then-outstanding motions to compel for reasons stated during an April 30, 2020 hearing); *Adversary Proceeding* ECF No. 148 (order denying a different motion for sanctions, and setting a schedule on whether Bluebell had violated the automatic stay); *Adversary Proceeding* ECF No. 170 (initially concluding that Bluebell had violated an automatic stay by seeking damages in the UK court for Jones's failure to pay the UK judgment), *but see Adversary Proceeding* ECF No. 211 at 5 (vacating that order because the UK proceedings that Jones claimed violated the automatic stay were "the continuation of an action against Jones to determine his liability to Bluebell" and no stay was in effect when "Bluebell obtained a money judgment against Jones by default in the United Kingdom court on January 25, 2017").

The bankruptcy court (Judge Rice) held a trial on the merits of Bluebell's adversary complaint on June 16 and 17, 2021. *Adversary Proceeding* ECF Nos. 229 & 230. On August 6, 2021, Judge Rice issued an opinion in the adversary proceeding, holding that Bluebell had not shown that Mr. Jones should be denied a discharge. *Bluebell Bus. Ltd. v. Jones* (*In re Jones*), No. 18-br-25698-DER, 2021 WL 3478682, at *1 (Bankr. D. Md. Aug. 6, 2021) (docketed in the adversary proceeding at ECF No. 234). After laying out the procedural history, which already had grown extensive by that time, Judge Rice made findings of fact, including that Mr. Jones had not concealed or failed to disclose assets, *id.* at *2, and that Mr. Jones had not made a "false statement . . . with the intent to defraud, *id.* at *6. On the latter point, Judge Rice concluded that Bluebell had not proven that "Jones was attempting to hide or falsify his address during his bankruptcy" but rather that "he simply didn't have permanent living arrangements and

did his best to keep his address up to date." *Id.* at *6. Accordingly, Judge Rice ordered that Mr. Jones be granted a discharge in the bankruptcy case. *Id.*

By that time, the *Bluebell* district court case to enforce the UK judgment had been stayed for almost three years. After Judge Rice granted him the discharge, Mr. Jones filed motions to lift the stay in and "re-open" the district court case. *Bluebell* ECF No. 78 (motion to lift stay, filed November 16, 2021); ECF No. 89 (motion to reopen, filed February 17, 2022). Although Mr. Jones was a defendant in that case—Bluebell had filed the case to enforce the UK judgment against him—it seems his purpose was to revive the counterclaims against Bluebell that he had pled in the *Bluebell* case back in 2017. *Bluebell* ECF No. 9 at 4–7 (alleging that the jet that Bluebell leased to IBX was "unairworthy" and that Bluebell had fraudulently induced IBX into the lease). Pursuant to Local Rule 101(2)(b), the Simms Showers attorney filed a notice that it no longer represented Bluebell, and thus withdrawing that firm's appearance. *Bluebell* ECF No. 79. New counsel then appeared for Bluebell (the Rosenberg Martin Greenberg LLP firm). ECF Nos 90 & 91.

Soon thereafter, Bluebell and Mr. Jones each agreed to dismiss their claims against each other. *See Bluebell* ECF No. 99 (March 31, 2022 motion by Mr. Jones to voluntarily dismiss his counterclaims, as well as to dismiss Bluebell's claims); *Bluebell* ECF No. 101 (response by Bluebell explaining the history of the case, and stating, "Bluebell consents to dismissal of Mr. Jones's counterclaims, and assuming the Court grants such dismissal, Bluebell reciprocally moves for the simultaneous dismissal of its claims against Mr. Jones also under Rule 41(a)(2), as those claims were only being preserved in order for Bluebell to retain its *res judicata* defense in this case."). Judge

Bennett granted what had become a joint request for dismissal, and closed that case in May 2022. *Bluebell* ECF No. 108.

But that was not the end of the saga. On September 30, 2023, Mr. Jones sent a demand letter to Simms Showers, the firm that, as noted above, had represented Bluebell in the adversary proceeding, as well as in the *Bluebell* case between October 2018 (about 15 months after that case was filed) and November 2021 (after Judge Rice had granted Mr. Jones a discharge in the bankruptcy case). In his letter, Mr. Jones threatened to sue Simms Showers for having filed the adversary complaint on behalf of Bluebell. ECF No. 32-4. Mr. Jones cited the sanction that Judge Rice had imposed, *id.* at 1, but omitted from the letter that Judge Rice had later vacated that sanction after determining that the UK proceedings had not violated any bankruptcy stay. *Adversary Proceeding* ECF No. 211 at 4–5. He accused Simms Showers of pursuing "unfounded claims" and doing so with "malice." ECF No. 32-4. He demanded a settlement of $100,000, and stated that a failure to respond within 15 days would "necessitate the initiation of appropriate legal proceedings against your firm." *Id.* at 3.

After receiving that letter, Simms Showers filed the original complaint in this case, on October 19, 2023. The firm sought a declaratory judgment "that the claims asserted by the Defendant Michael Jones were properly the subject of the bankruptcy estate, and that having received a discharge, cannot be asserted in any forum, that such claims fail to state a claim upon which relief may be granted." ECF No. 1 at 4. Simms Showers stated that the basis for federal subject matter jurisdiction was diversity of citizenship, because Plaintiff is a law firm based in Maryland, and Mr. Jones "is a resident and citizen of Nicaragua." *Id.* ¶¶ 2–4. Simms Showers did not initially serve process, prompting the Court to issue an order to show cause why the complaint should

not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8.a. ECF No. 7.

But then Mr. Jones filed his own lawsuit, this time in the Circuit Court for Baltimore County, Maryland, on August 24, 2024. In that case, Mr. Jones asserted the claims that he had threatened a year earlier in his September 2023 demand letter, suing Simms Showers for malicious prosecution, abuse of process, and intentional infliction of emotional distress. ECF No. 32-6 (Circuit Court complaint).

The filing of the Circuit Court case, in which Mr. Jones listed his address as "San Juan del Sur, Rivas, Nicaragua 48600," prompted Simms Showers to file a motion in *this* Court, seeking leave for alternative service. ECF No. 19. The Court granted that motion on August 29, 2024, authorizing Simms Showers to serve Mr. Jones "by mailing to the address of San Juan del Sur, Rivas, Nicaragua 48600, and by electronic mail to mikebroadband@gmail.com." ECF No. 20. A few days later, Mr. Jones filed a motion to dismiss. ECF No. 22. Simms Showers responded by filing an amended complaint, ECF No. 23, as well as an opposition to the motion to dismiss, ECF No. 24. Mr. Jones filed a motion to dismiss the amended complaint, and to quash what he argued was "defective" service of process. ECF No. 25. In December 2024, the Circuit Court issued an order staying that case "pending resolution of the declaratory action filed in the United States District Court for the District of Maryland," referring to this case. ECF No. 29-1. Since then, in this Court, Simms Showers has filed a motion for leave to file a second amended complaint, to make two changes: to add a request for an injunction (in addition to a declaratory judgment), and to invoke federal question jurisdiction (in addition to diversity of citizenship jurisdiction) because "preemption is an essential element of

Plaintiff's well-pled Second Amended Complaint." ECF No. 32 (motion); ECF No. 32-2 (proposed second amended complaint); ECF No. 32-3 (redline comparison version).[1]

## II.     DISCUSSION

As an initial matter, the Court will grant Simms Showers's motion for leave to file a second amended complaint (ECF No. 32). The factual allegations in that version of the complaint are the same as the amended complaint (ECF No. 23). And Mr. Jones has filed a motion to dismiss in which he incorporates his prior arguments. ECF No. 36. Accordingly, the Court deems the proposed Second Amended Complaint (ECF No. 32-2) as the operative complaint and will direct the Clerk to docket it as such. Relatedly, Mr. Jones's motion to dismiss the original complaint, ECF No. 22,  and the portions of ECF No. 25 that constituted a motion to dismiss the First Amended Complaint are now moot given Plaintiff's filing of the Second Amended Complaints. The Court considers Mr. Jones to have incorporated those arguments—including regarding service of process— and reasserted them as grounds for dismissing the Second Amended Complaint. Accordingly, considering the claims asserted in the Second Amended complaint, the questions presented are whether service of process on Mr. Jones was proper; whether this Court has subject matter jurisdiction based on federal question or diversity-of- citizenship jurisdiction; and whether Simms Showers's declaratory judgment action states claims on which relief can be granted.

### A.     Service of process

Mr. Jones argues Simms Showers's claims should be dismissed because service of process was defective. ECF No. 25.  As noted above, Judge Gallagher ruled in August

---

[1] Mr. Jones has also filed a motion for sanctions. ECF No. 35. That motion will be addressed in a separate memorandum opinion.

2024 that Simms Showers had satisfied the requirements of Federal Rule of Civil Procedure 4(f) to justify authorizing Simms Showers to serve Mr. Jones by mail to San Juan del Sur, Rivas, Nicaragua 48600 and by email. *See* ECF No. 19 (motion); ECF No. 20 (order). Mr. Jones admits these were his correct physical and email addresses. And he almost immediately responded to service by those means. ECF No. 22 (motion to dismiss filed 10 days after Simms Showers filed a notice of service by the authorized alternative means).

But Mr. Jones argues that Simms Showers's motion for alternative service should have been denied (or that the order should be reconsidered and denied). He argues as follows:

> Despite being fully aware of Defendant's residence in San Juan del Sur, Nicaragua, and having direct contact information, including email and phone details, Plaintiff made no attempts to serve Defendant through traditional means. This inaction persisted for nearly a year, with Plaintiff only seeking alternative service on August 29, 2024—five days after Defendant filed his complaint in Baltimore County Circuit Court. This timing suggests that Plaintiff sought to bypass normal service procedures and mislead the Court into believing that Defendant was difficult to serve, ultimately requesting email service under false pretenses. Such tactics demonstrate a clear attempt to manipulate the service process, and this Court.

ECF No. 25 at 8. He also argues that not only did Simms Showers not actually "attempt[] to serve Defendant through traditional means" but "misrepresented their efforts to serve Defendant, claiming they were 'unable to personally serve the Defendant due to his alleged residence in Nicaragua,'" a statement Mr. Jones contends is "blatantly misleading." *Id.* at 10; *see also* ECF No. 13 (a March 2024 motion by Simms Showers describing "difficulties in obtaining service"); ECF No. 22-1 (affidavit of Mr. Jones

regarding communications between him and Simms Showers that he contends

contradict Simms Showers's representation regarding service attempts).

Rule 4(f), entitled "Serving an Individual in a Foreign Country," provides as

follows:

> Unless federal law provides otherwise, an individual—other
> than a minor, an incompetent person, or a person whose
> waiver has been filed—may be served at a place not within
> any judicial district of the United States:
>
>> (1) by any internationally agreed means of service that is
>> reasonably calculated to give notice, such as those
>> authorized by the Hague Convention on the Service
>> Abroad of Judicial and Extrajudicial Documents;
>>
>> (2) if there is no internationally agreed means, or if an
>> international agreement allows but does not specify other
>> means, by a method that is reasonably calculated to give
>> notice:
>>
>>> (A) as prescribed by the foreign country's law for
>>> service in that country in an action in its courts of
>>> general jurisdiction;
>>>
>>> (B) as the foreign authority directs in response to a
>>> letter rogatory or letter of request; or
>>>
>>> (C) unless prohibited by the foreign country's law, by:
>>>
>>>> (i) delivering a copy of the summons and of the
>>>> complaint to the individual personally; or
>>>>
>>>> (ii) using any form of mail that the clerk addresses
>>>> and sends to the individual and that requires a
>>>> signed receipt; or
>>
>> (3) by other means not prohibited by international
>> agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Nicaragua is a signatory to the Hague Service Convention.[2] That means to serve process in Nicaragua a party must either comply with the Hague Service Convention procedures, Fed. R. Civ. P. 4(f)(1), or "by other means not prohibited by international agreement, as the court orders," Fed. R. Civ. P. 4(f)(3).

There is no evidence in the record that Simms Showers took steps to comply with the procedures set forth in the Hague Service Convention. And Simms Showers does not contend that it did. Instead, it argues that Mr. Jones's motion to dismiss based on deficient service of process should be denied because (1) service via the Hague Convention is not required to be "attempted before other means are used" and instead Rule 4(f)(3) permits service by any "means not prohibited by international agreement, as the court orders," which "is how Jones was served here" as authorized by Judge Gallagher's August 2024 order, ECF No. 26 at 4 n.10; (2) even if service of the *original* complaint was did not comply with Rule 4, "the *Amended* Complaint itself was properly served as Jones requested that all service occur through email," *id.* at 4 (relying on ECF No. 26-2, a September 6, 2024 email from Mr. Jones); and (3) in any event Mr. Jones has waived formal service of process because he "has attempted to serve discovery responses, either filed or indicated he would file a motion for a scheduling order, requested a Rule 26(f) conference, and has addressed the merits of the suit (rather than just challenging service)," *id.*

On the record in this case, the Court need not decide most of the disputes between the parties with regard to service, including the legal question of whether Rule

---

[2] The list of countries that are signatories, their ratification dates, and links to any reservations, declarations, notifications or depositary communications, is available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

4 requires an attempt at service pursuant to the Hague Service Convention or some other showing before seeking leave to serve by alternative means, or whether Simms Showers was accurate in stating in its motion for alternative service that it "ha[d] been unable to obtain personal service," ECF No. 19 at 1. The Court need not reach those questions because Mr. Jones has expressly consented to service by email. On September 6, 2024, after he filed the Circuit Court action, he emailed Simms Showers and stated, in relevant part, "I would like to confirm that email service and correspondence is acceptable for all active cases between us, including the case you filed against me in District Court." ECF No. 26-2. He reiterated, "[g]iven my current residence in San Juan del Sur, Nicaragua, where there is no reliable mail service, I am approving email service and correspondence for both cases." *Id.* That consent waives Mr. Jones's objection to Simms Showers's original method of service. Accordingly, Mr. Jones's "Motion to Quash Defective Service of Process," ECF No. 25, will be denied.

### B.    Subject matter jurisdiction – federal question

The next question is whether this Court has subject matter jurisdiction over this action. Simms Showers invokes both federal question jurisdiction (on two separate grounds) and diversity-of-citizenship jurisdiction. The Court first addresses Simms Showers's invocation of federal question jurisdiction.

#### i.    Some context

Under 28 U.S.C. § 1331, federal district courts have subject matter jurisdiction, regardless of the citizenship of the parties or the amount in controversy, with respect to civil actions "arising under the Constitution, laws, or treaties of the United States." That form of subject matter jurisdiction is known as federal question jurisdiction. Generally, a case will "arise under" federal law when a plaintiff pleads a cause of action created by

federal law. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312

(2005). And at least in general, courts determine whether they have subject matter

jurisdiction over an action based on a plaintiff's "well-pleaded complaint," as opposed to

also considering whether the case implicates federal defenses. *Franchise Tax Bd. of Cal.*

*v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 n.9 (1983). Simms Showers's

invocation of § 1331 jurisdiction implicates two exceptions to the well-pleaded complaint

rule, discussed below.[3]

But before getting to those exceptions, the § 1331 analysis is further complicated

by the fact that Simms Showers' complaint relies on the Declaratory Judgment Act as

authorizing its claims. *See* ECF No. 32-2 ¶ 1 ("This is an action for declaratory relief

pursuant to 28 U.S.C. § 2201 wherein Plaintiff seeks a declaration that the claims that

---

[3] Courts and scholars have debated whether these doctrines are really *exceptions* to the well-pleaded complaint rule, or applications of that rule. *See, e.g.*, Trevor Morrison, *Complete Preemption and the Separation of Powers*, 155 U. Pa. L. Rev. 186, 187 (2007) (noting that the Supreme Court "has refused to cast complete preemption as an exception to the well-pleaded complaint rule, reflecting, perhaps, a reluctance to admit to the judicial creation of such exceptions in the absence of any expressed legislative intent to do so"). *Compare Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."), *with Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (referring to complete preemption as an "exception to the well-pleaded complaint rule"). That debate is immaterial to the substantive disputes in this case. By referring to the two subject matter jurisdiction doctrines here—the complete-preemption doctrine and the doctrine that federal question jurisdiction can arise when a "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," *Mayor and City Council of Baltimore v. BP P.L.C.* ("*Baltimore v. BP*"), 31 F.4th 178, 208 (4th Cir. 2022)—as "exceptions" to the well-pleaded complaint rule, the Court does not decide one way or the other whether the correct jurisprudential framing is to conceive of these doctrines as applications or exceptions; the "exception" label is just that, a label, used in an attempt at a degree of clarity in this confusing area of the law.

have been made by Michael Jones against the Plaintiff are preempted by the exclusive jurisdiction of the Federal Courts over bankruptcy, and therefore Michael Jones cannot assert his state law claims for allegedly improper behavior during his bankruptcy proceedings in any forum, and that the claims asserted fail to state a cause of action."). Count 2 does not expressly identify the Declaratory Judgment Act as the basis for its requested injunction, but Count 2 as pled is derivative of Count 1. See ECF No. 32-2 ¶ 24 ("Plaintiff would suffer irreparable harm if the Circuit Court were to permit the claim to proceed whilst the Plaintiff's declaratory action was pending, or worse, decide what properly lies within the exclusive jurisdiction of the Federal Courts.").

In declaratory judgment actions filed in (or removed to) federal court, the question becomes whether, "if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd.*, 463 U.S. at 19; *see, e.g.*, *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) ("Because the complaint at issue does not assert an affirmative cause of action arising under federal law, we must ask whether it seeks declaratory relief on a matter for which Drain [the federal defendant] could bring a coercive action arising under federal law against Columbia Gas [the federal plaintiff]."). Here, the Court need not hypothesize what "coercive action" (in the *Franchise Tax* lingo) Mr. Jones might have brought, because Mr. Jones has gone ahead and filed a "coercive action": the Circuit Court case. That means to determine whether this Court has federal subject matter jurisdiction over *this* case, the Court looks not only at Simms Showers's federal complaint but also at Mr. Jones's Circuit Court complaint (even though it has not been removed to this Court).

But Mr. Jones's Circuit Court complaint does not plead federal causes of action either. That, however, still does not end the analysis, because although *in general* federal question jurisdiction is limited to circumstances where a plaintiff's cause of action (or hypothetical coercive cause of action) was "create[d]" by federal law, *Franchise Tax Bd.*, 463 U.S. at 9 (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916)), and the well-pleaded complaint rule is a "powerful doctrine," *id.*, it is also only "a quick rule of thumb," *id.* at 11. Here, Simms Showers argues that although Mr. Jones's causes of action (malicious prosecution, abuse of process, and intentional infliction of emotional distress) are all created by state law, they actually "arise[] under" federal law for § 1331 purposes for two independent reasons: (1) Mr. Jones's claims have been completely preempted by federal law to the point of rendering his claims essentially federal, and (2) Simms Showers has certain federal *defenses* to Mr. Jones's claims, including field preemption (not to be confused with complete preemption, *see* n.4, *infra*), that are sufficiently disputed and substantial that they trigger application of what has become known as *Grable* jurisdiction. For the reasons that follow, this Court has federal subject matter jurisdiction under at least the "complete preemption" doctrine.

### ii.    Complete preemption

"[T]he doctrine of complete preemption, unlike ordinary preemption, is a recognized exception to the well-pleaded complaint rule." *Baltimore v. BP*, 31 F.4th at 198. "As a jurisdictional doctrine, it has the effect of transforming a state-law cause of action into one arising under federal law because Congress has occupied the field so thoroughly as to leave no room for state-law causes of action at all." *Id.* (cleaned up). Although "merely having a federal defense to a state law claim is insufficient" to

establish federal question jurisdiction, a federal court has subject matter jurisdiction "if the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter." *Lontz*, 413 F.3d at 439–40.[4]

There is a "presumption . . . against finding complete preemption," and "completely preempted claims are rare." *Id.* at 440. "'Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction.'" *Id.* (quoting *Custer v. Sweeney,* 89 F.3d 1156, 1167 (4th Cir. 1996)). But the presumption against complete preemption, like the presumption against ordinary preemption, "is rebuttable"; federal law does "occasionally" so thoroughly "subsume[]" a putative state law claim that federal law "provides the exclusive cause of action for such claims." *Id.* (cleaned up); *see also*

---

[4] The parties' briefing conceives of the relevant question as one of field preemption, which is a species of ordinary preemption (along with conflict preemption). "[O]rdinary preemption is not a jurisdictional doctrine because it 'simply declares the primacy of federal law, regardless of the forum or the claim.'" *Baltimore v. BP*, 31 F.4th at 198 (quoting *Lontz*, 413 F.3d at 440). As the Fourth Circuit has put it, "[c]omplete preemption and ordinary preemption on the merits 'are not as close kin jurisprudentially as their names suggest.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 702 (4th Cir. 2015) (quoting *Lontz*, 413 F.3d at 440). "[C]omplete preemption is a 'jurisdictional doctrine,' while 'ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim.'" *Johnson*, 781 F.3d at 702 (quoting *Lontz*, 413 F.3d at 440). In other words, "complete" preemption is different from ordinary preemption both in scope (it applies only to some preemptive federal laws) and in effect (it is a jurisdictional doctrine). The relationship between ordinary preemption (and particularly field preemption) and complete preemption (the jurisdictional doctrine) is unquestionably confusing. *See, e.g.*, Gil Seinfeld, *The Puzzle of Complete Preemption*, 155 U. Pa. L. Rev. 537, 576–77 (2007); Morrison, *Complete Preemption*, 155 U. Pa. L. Rev. at 192–93. But the two doctrines are "different animals." *Johnson*, 781 F.3d at 702.

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (corollary presumption for ordinary preemption). "To rebut the presumption against complete preemption, a defendant must demonstrate that 'Congress's intent in enacting the federal statute at issue' was to extinguish the state-law claim." *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 212 (4th Cir. 2021) (quoting *Metro. Life*, 471 U.S. at 738). "This requires a showing that: (1) the preempting statute displays a clear congressional intent to 'entirely displace' state law; and (2) the preempting statute creates an exclusive federal cause of action in an area of 'overwhelming national interest.'" *Id.* (quoting *Lontz*, 413 F.3d at 441). Part of that analysis requires that there is an "pre-existing federal cause of action that can be brought in the district courts." *Lontz*, 413 F.3d at 441 (emphasis omitted). "[F]or the purposes of complete preemption, the preempting statute must provide 'the *exclusive* cause of action' for claims in the area that the statute preempts." *Johnson*, 781 F.3d at 702 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

The Supreme Court has identified three federal laws that so completely preempt state law that they authorize federal jurisdiction over preempted state-law claims: "(1) §§ 85 and 86 of the National Bank Act of 1863; (2) § 502 of the Employee Retirement Income Security Act of 1974 (ERISA); and (3) § 301 of the Labor Management Relations Act of 1947 (LMRA)." *Baltimore v. BP*, 31 F.4th at 215 (referring to *Beneficial Nat. Bank*, 539 U.S. at 441; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 560 (1968)). The Fourth Circuit has "extended complete preemption to certain state-law claims implicating § 301(a) of the Copyright Act and § 10501(b) of the Interstate Commerce Termination Act." *Id.* (citing *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230–33 (4th Cir. 1993) (section 301(a) of the Copyright Act); *Skidmore*, 1 F.4th at 212–17

(section 10501(b) of the Interstate Commerce Termination Act)). But those lists are not exclusive; the question in any case where a party seeks to establish federal subject matter jurisdiction based on complete preemption is whether "the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter." *Lontz*, 413 F.3d at 439–40.

As noted above, Mr. Jones was the debtor in the Chapter 7 bankruptcy, *In re Michael Scott Jones*, Case No. 18-25698 (Md. Bankr.), that gave rise to the adversary proceeding between Bluebell and Mr. Jones, *Bluebell v. Jones* (*In re Jones*), Case No. 19-ap-74 (Md. Bankr.). Mr. Jones has sued Simms Showers for "actions taken" by Simms Showers "during the adversary proceeding," ECF No. 22 at 8, which was a "core proceeding under 28 U.S.C. § 157(b). *Bluebell v. Jones* (*In re Jones*), 2021 WL 3478682 at *1. The first paragraph of his Circuit Court complaint makes clear that the case constitutes an attack on Simms Showers's conduct in the adversary proceeding process itself:

> Plaintiff Michael Jones ("Plaintiff") brings this action against Defendants Simms Showers LLP and Bluebell Business Ltd. ("Defendants") for malicious prosecution, abuse of process, and intentional infliction of emotional distress. These claims arise from the adversary proceeding (Adversary Proceeding No. 19-00074-DER) initiated by the Defendants during Plaintiff's Chapter 7 bankruptcy case (Bankruptcy Case No. 18-25698-DER), which was overwhelmingly resolved in Plaintiff's favor.

ECF No. 32-6 ¶ 1.

As noted above, the adversary proceeding that Simms Showers filed on Bluebell's behalf arose out of allegations that Mr. Jones had "conceal[ed] where he lives by knowingly making false statements to this Bankruptcy Court in Case No. 18-25698-RAG

18

. . . and to the United States District Court for the District of Maryland in the civil case brought against him by Plaintiff Bluebell, pending as Case No. 17-cv-02150-RDB." *Adversary Proceeding* ECF No. 1 ¶ 2. The cause of action asserted in the adversary proceeding was under 11 U.S.C. § 727(a)(4)(A), which provides that a bankruptcy court "shall [not] grant the debtor a discharge" if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." The relief that Bluebell sought through the adversary proceeding was denial of a discharge, in furtherance of its objective of enforcing the UK judgment based on IBX Jets' breach of the lease, which had been guaranteed by Mr. Jones. *Adversary Proceeding* ECF No. 1 at 6.

In the Circuit Court case, Mr. Jones alleges that those claims were "baseless," "speculative," "unwarranted," "frivolous," and "outside the bounds of professional legal advocacy." ECF No. 32-6 ¶¶ 2–3, 5. He goes on to challenge various other actions by Simms Showers during the course of its representation of Bluebell in the adversary proceeding, including a motion filed by Bluebell, *id.* ¶ 14, and "remarks" made by counsel during a hearing, *id.* ¶¶ 3–4. He also contends that Simms Showers's "purpose" and "motive" in filing the adversary action was improper. *E.g.*, *id.* ¶¶ 18, 23–32. He argues that the way he knows the adversary proceeding was baseless from the beginning was that he prevailed in that proceeding on the merits. *E.g.*, *id.* ¶ 43 ("The Bankruptcy Court decisively rejected the Defendants' allegations of fraud, stating, 'There is simply no evidence that Jones was attempting to hide or falsify his address during his bankruptcy–he simply didn't have permanent living arrangements and did his best to keep his address up to date.' . . . This finding illustrates the frivolous nature of the Defendants' accusations, which lacked any factual foundation.") (quoting *Bluebell*, 2021 WL 3478682, at *6).

19

But there is a body of federal law that governs attorneys' conduct when they represent clients in bankruptcy proceedings. These include Rule 9011 of the Federal Rules of Bankruptcy Procedure, the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure. *See In re Weiss*, 111 F.3d 1159, 1170 (4th Cir. 1997) ("In deciding cases based on violations of Rule 9011, courts may look to cases that interpret Federal Rule of Civil Procedure 11."). Those rules are promulgated pursuant to authority conferred by Congress. 28 U.S.C. § 2075. Rule 9011, among other things, obligates an attorney to "certif[y] . . . to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances" that the "pleading, written motion, or other document" being filed "is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs"; that any "claims, defenses, and other legal contentions" contained therein "are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law"; and that "the allegations and factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b). And Rule 9011(c) sets forth a detailed procedure for when an opposing party believes that an attorney has violated the obligations in Rule 9011(b).

Mr. Jones's claims against Simms Showers fall squarely within the complete preemptive effect of Rule 9011. His claims boil down to a claim that the adversary proceeding that Simms Showers filed for Bluebell against Mr. Jones in bankruptcy court was frivolous and should never have been filed. That type of concern is precisely what Rule 9011 was enacted not only to govern, but also to remedy. And although Rule 9011 does not create a federal cause of action, the principles that the Fourth Circuit was articulating when it explained that a prerequisite for complete preemption is a "pre-

20

existing federal cause of action that can be brought in the district courts," *Lontz*, 413 F.3d at 441 (emphasis omitted), apply here too. If Mr. Jones had wished to challenge Simms Showers's assertion of Bluebell's claims against him in the adversary proceeding, he could have done so, including asserting that they were presented for an "improper purpose," or were not 'warranted by existing law," or contained "allegations and factual contentions" that lacked "evidentiary support." Fed. R. Bankr. P. 9011(b). Those are exactly the claims he has asserted in the Circuit Court case. ECF No. 32-6. Mr. Jones could have invoked the remedial procedures in Rule 9011(c), and had every opportunity to do so. The state-law claims that he has asserted are precisely ones that Congress intended to "displace" when it authorized the Supreme Court to promulgate the Bankruptcy Rules, and that were intended to be "displaced" when Rule 9011 was promulgated.

And this is not hypothetical—Mr. Jones *did* request that the bankruptcy court sanction Bluebell and Simms Showers for conduct related to the adversary proceeding, specifically for obtaining a money judgment against Jones by default in the U.K. court. *Adversary Proceeding* ECF No. 153 (in part "Debtor's Request For Creditors And Their Attorneys To Be Held In Contempt And Assessed Sanctions For Violating The Automatic Stay"). Initially, the bankruptcy court granted the request and imposed sanctions pursuant to 11 U.S.C. § 362(k). *Adversary Proceeding* ECF No. 170. Mr. Jones touts that in his Circuit Court complaint. ECF No. 32-6 ¶ 5. But later the bankruptcy court vacated the sanctions order, because it had been based on a mistaken premise: Bluebell and Simms Showers had not violated any automatic stay, because there was no automatic stay at the time the original U.K. action had been filed. *Adversary Proceeding* ECF No. 211 at 4 ("Section 362(c)(3) terminated the automatic stay as to Jones and his property

as of December 29, 2018. Thus, the automatic stay was not in effect at the time the relevant events took place in 2020 in the United Kingdom litigation. That being the case, Bluebell could not have committed a willful violation of the automatic stay."); *see also id.* at 5 (explaining that it is "well settled in this district that if not timely extended as provided in § 362(c)(3), the automatic stay under § 362(a) terminates as to the debtor and the debtor's property, but not as to property of the debtor's bankruptcy estate," and thus "§ 362(c)(3)(A) automatically terminated the stay as to Jones and his property on December 29, 2018"). The fact that Mr. Jones took advantage of the bankruptcy sanctions rules confirms that there were procedures and remedies available to him in that proceeding if he had wished to challenge other aspects of Simms Showers's and Bluebell's conduct during the adversary proceeding.

Mr. Jones argues that his tort claims "address alleged adversarial misconduct by Plaintiff and are entirely separate from these core protections, focusing instead on personal harms without interfering with the essential administration of the bankruptcy estate." ECF No. 28 at 6. "Preemption in this context," he argues, "does not extend to adversarial conduct that merely occurs within the bankruptcy framework." ECF No. 28 at 6. But the "adversarial conduct" that gave rise to the claims he has asserted in the Circuit Court case are precisely the type of conduct governed by Rule 9011. Mr. Jones also argues that complete preemption cannot be a basis for subject matter jurisdiction because "[t]he adversary [proceeding] is closed" and thus "there is no live bankruptcy matter." ECF No. 34 at 2 n.3. But the complete preemption analysis focuses on subject matter, not the contemporaneousness of state court and federal court proceedings.

The conclusion that complete preemption applies here is further supported by *Koffman v. Osteoimplant*, 182 B.R. 115 (D. Md. 1995). Although dealing with ordinary

preemption—not complete preemption, the jurisdictional doctrine—in *Koffman*, Judge Smalkin of this court analyzed whether state-law claims for malicious prosecution, abuse of process, and civil conspiracy were preempted by sections 362(h) and 303(i) of the Bankruptcy Code. Those bankruptcy law provisions prohibit involuntary bankruptcy petitions from being filed in bad faith or being supported by materially false statements, 11 U.S.C. § 303(i)(2), and provide sanctions for willful violations of an automatic stay, 11 U.S.C. § 362(h). The Bankruptcy Code also "contains numerous other provisions directed toward regulating the use of the bankruptcy process and the conduct of the parties in bankruptcy court." *Koffman*, 182 B.R. at 124. When the plaintiff in *Koffman* asserted state-law causes of action based on Osteoimplant's conduct in a prior bankruptcy proceeding, that presented "a conflict between the states' traditional authority to provide tort remedies to their citizens, *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248 (1984), and Congress' express Constitutional authority to establish 'uniform Laws on the subject of Bankruptcies throughout the United States,' U.S. Const. art. I, § 8, cl. 4." *Id.* at 123.

As Judge Smalkin explained in *Koffman*, the resolution of that conflict compelled by preemption doctrine was clear: Although the existence of remedies under bankruptcy law does not "imply congressional intent to preempt *all* state activity in the area," the existence of those remedies clearly did imply congressional intent to preempt "state tort actions based on allegedly bad faith bankruptcy fillings or violations of the automatic stay." *Id.* at 125. Concluding otherwise "would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme," "erode the exclusive federal authority in this area," and "threaten the uniformity of federal bankruptcy law." *Id.* For example, "[p]arties could be deterred

from exercising their rights in bankruptcy if, by filing a bankruptcy petition, they risk being faced with a state court lawsuit and liability for substantial damages." *Id.* at 126. That same reasoning applies just as forcefully in the context of the complete preemption doctrine.

For these reasons, because Mr. Jones's Circuit Court claims fall squarely within the exclusive federal court authority to sanction attorneys for violations of Rule 9011 of the Federal Rules of Bankruptcy Procedure, Mr. Jones's claims are completely preempted by Rule 9011 such that this Court has subject matter jurisdiction over them.[5]

### iii.    The *Grable-Gunn* exception

In addition to the complete preemption doctrine, there are other exceptions to the well-pleaded complaint rule. One has become known as "*Grable* jurisdiction," *Baltimore v. BP*, 31 F.4th at 209, or the "[*Grable-Gunn*] framework," *Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022), referring to the two primary Supreme Court cases in this area: *Grable & Sons Metal Products*, 545 U.S. at 308, and *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Under *Grable-Gunn*, there is a "slim category" of cases in which, although "state law supplies the cause of action," federal courts "have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Baltimore v. BP*, 31 F.4th at 208 (quoting *Burrell v. Bayer Corp.*, 918 F.3d

---

[5] In addition to Rule 9011, a bankruptcy court "also possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct." *In re Weiss*, 111 F.3d at 1171 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991)). Having concluded that Rule 9011 has complete preemptive effect with respect to the types of claims Mr. Jones has asserted here, the Court need not and does not decide whether the bankruptcy court's *inherent* sanctions power also could give rise to federal jurisdiction under the complete preemption doctrine.

372, 380 (4th Cir. 2019)). A party advocating for federal subject matter jurisdiction

based on *Grable-Gunn* must establish that a "federal issue is: (1) necessarily raised, (2)

actually disputed, (3) substantial, and (4) capable of resolution in federal court without

disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

In addition to invoking complete preemption, discussed above, Simms Showers

appears to invoke *Grable-Gunn* as an alternative basis for subject matter jurisdiction.

Its argument is similar to its complete preemption argument. As noted above, Mr. Jones

has conceded (as he must) that his state-law claims "specifically arise from actions taken

[by Simms Showers] during the adversary proceeding." ECF No. 22 at 8. In *Grable-*

*Gunn* terms, the "federal issue" that Simms Showers identifies as satisfying the four

elements is, in essence, that Mr. Jones's claims necessarily require deciding whether the

claims that Simms Showers filed on behalf of Bluebell in the adversary proceeding were

frivolous and whether Simms Showers otherwise abused the Bankruptcy Court's

adversary proceeding.

Because this Court finds it has federal question jurisdiction under the complete

preemption doctrine, it need not decide whether it also has jurisdiction on *Grable-Gunn*

grounds.

### C.    Subject matter jurisdiction – diversity of citizenship

Under 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over

disputes among "citizens of different states" and "citizens of a State and citizens or

subjects of a foreign state" (among other categories) "where the matter in controversy

exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1)–(2). Simms Showers

argues that this Court has diversity jurisdiction over the case because Simms Showers is

a citizen of Maryland and Mr. Jones is a citizen of Nicaragua for diversity jurisdiction

purposes, or at least that he was at the time the case was filed. *E.g.*, ECF No. 32-2 ¶¶ 2–3. Mr. Jones argues this Court lacks diversity jurisdiction for two reasons.

First, he argues the amount in controversy does not exceed $75,000. He does not dispute that this case arose from a settlement demand of $100,000. ECF No. 32-4. But he argues that he has since withdrawn his $100,000 demand, and instead offered $4,500 to settle both this case and the Circuit Court case. ECF No. 31-1 at 2 (August 16, 2024 email); ECF No. 31-1 at 3 (January 7, 2025 reiterating a willingness to settle both cases for $4,500). Simms Showers responds by noting that (a) when Mr. Jones filed his lawsuit in the Circuit Court, he necessarily was seeking monetary relief in excess of $75,000, which is the threshold for filing a lawsuit in that court (as opposed to in the District Court of Maryland), ECF No. 33-2 (citing Md. R. 2-305); and (b) the fact Mr. Jones offered to settle the case below the $75,000 threshold does not establish "guardrails preventing him from recovering more," *id.* at 3, and that when Simms Showers proposed to jointly stipulate that that was the amount in controversy, Mr. Jones apparently refused. ECF 33-2 at 3; ECF No. 36-1.

Second, Mr. Jones argues that even if the amount in controversy exceeded $75,000, there is no diversity jurisdiction because he is "a U.S. citizen domiciled abroad" and thus is "stateless" for diversity jurisdiction purposes. ECF No. 31 at 2; *see also, e.g.*, ECF No. 34 at 2 ("Defendant is a U.S. citizen residing abroad ('stateless' for diversity), not a 'citizen of Nicaragua'"); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (addressing the concept of a "stateless" person with respect to diversity-of-citizenship jurisdiction). Although he was living in Nicaragua at the time, apparently indefinitely, and concedes he was a *resident* of Nicaragua (not just a visitor), he argues that his residency in Nicaragua was not sufficiently permanent to render him

a "citizen or subject" of Nicaragua for purposes of 28 U.S.C. § 1332(a)(3). *See The Requirement and Meaning of Citizenship—In General*, 13E Fed. Prac. & Proc. Juris. § 3611 (3d ed.) ("[A] person is considered a citizen or subject of a foreign nation if he or she is accorded that status by the laws or government of that country."). In response, Simms Showers acknowledges that if Mr. Jones has *not* actually established domicile in Nicaragua, that may mean § 1332(a)(2) does not apply, ECF No. 33-2 at 3, but contends he *has* established domicile in Nicaragua sufficient to support diversity jurisdiction under § 1332(a)(2)—and that at minimum the Court should authorize limited discovery over Mr. Jones's domicile. ECF No. 33-2 at 3–4 ("Defendant himself claims to have resided abroad for a number of years. He has represented in other state and federal courts that he resides in Nicaragua. He did not initially assert his citizenship as a grounds for dismissal, despite extensive filings. There is more than sufficient evidence to conclude that diversity jurisdiction may exist, and the Plaintiff requests the opportunity to conduct discovery on a limited scale as to this issue.").

These questions are perhaps just as knotty as those presented by the questions of whether this Court has federal question jurisdiction. But because the Court concludes that it does have subject matter jurisdiction under 28 U.S.C. § 1331, it need not decide whether it also would have jurisdiction under 28 U.S.C. § 1332.

### D.   Whether the complaint states claims on which relief can be granted

Mr. Jones also has moved to dismiss the complaint on Rule 12(b)(6) grounds, arguing the complaint fails to state claims on which relief can be granted. *See, e.g.*, ECF No. 22 at 10–11. He makes three arguments.

First, Mr. Jones argues that Simms Showers's complaints should be dismissed (and motion for leave to amend denied) based on judicial estoppel. ECF No. 22 at 11–12; ECF No. 28 at 2–3. His argument is that "[f]rom March 11, 2019, when [Simms Showers as counsel to Bluebell] filed the adversary proceeding, through September 21, 2021, when the discharge was finally entered, Plaintiffs pursued Mr. Jones under a post-petition framework. . . . Now, in an attempt to shield themselves from liability in this declaratory judgment action, Plaintiffs are trying to reframe those very same post-petition matters as pre-petition conduct." ECF No. 22 at 11. The Fourth Circuit has identified three criteria that must be present for judicial estoppel to apply: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation," and "the position sought to be estopped must be one of fact rather than law or legal theory;" (2) "the prior inconsistent position must have been accepted by the court;" and (3) "the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage.'" *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) (quoting *Tenneco Chemicals, Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982)). Here, Mr. Jones has not identified any "position" that Simms Showers has taken that is "of fact rather than law" and that was "accepted by [a] court" as to which Simms Showers is now advocating for an "inconsistent position." Judicial estoppel does not bar Simms Showers's declaratory judgment action, at least at the pleadings stage.

Second, Mr. Jones argues that Bluebell is an "indispensable party." ECF No. 40 at 4 n.1. Federal Rule of Civil Procedure 19 provides certain rules for when a person who is not a party must be joined as a party. Rule 19(a) applies where the person "is subject to service of process" and where joinder of that person "will not deprive the court of

28

subject-matter jurisdiction." Rule 19(b) applies where a person is "required to be joined if feasible" but that person "cannot be joined." Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The rule then lays out "factors for the court to consider" in deciding whether, in the absence of joinder, the case should be dismissed. *Id*. These factors "include":

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id*. Under Federal Rule of Civil Procedure 12(b)(7), Mr. Jones bears the burden to "show that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). Here, Mr. Jones has not articulated any cognizable ground on which to deem Bluebell either a party "required to be joined if feasible" under Rule 19(a) or a party as to which "in equity and good conscience" the action should not proceed in its absence under Rule 19(b).

Third, Mr. Jones argues that the case should be dismissed because the original civil cover sheet did not list the adversary proceeding as a related case. ECF No. 22 at 13–14. He cites no authority that such omission would justify dismissal and the Court is not aware of any such authority.

Finally, Mr. Jones argues that Simms Showers's complaint (or at least the original one) was "premature" when filed because "at the time of Simms Showers LLP's filing, no live controversy existed. *E.g.*, ECF No. 22 at 6, 12–13. He argues that Simms Showers "initiated this declaratory judgment action based solely on two emails sent by Defendant—emails that contained nothing more than a general inquiry regarding settlement and a request for Plaintiff's registered agent information." ECF No. 27 at 3. The latter assertion borders on misstatement. The demand letter is in the record and was far from a "general inquiry regarding settlement" but was clearly a demand letter threatening litigation in the absence of a "prompt response." ECF No. 32-4 at 3. In any event, Mr. Jones's ripeness argument was raised before he filed the Circuit Court action and before Simms Showers filed the amended complaint in this case. The Court construes Mr. Jones's subsequent files in this case as having withdrawn the argument that this case should be dismissed on ripeness grounds.

For these reasons, Simms Showers's complaint will not be dismissed for failure to state a claim.

## III.    CONCLUSION

For the reasons stated above, the Court concludes that it has subject matter jurisdiction over this action, and that Simms Showers has stated claims on which relief can be granted. A separate order follows.

Date:  September 24, 2025

_____/s/_____

Adam B. Abelson
United States District Judge